## NORAIR ENGINEERING CORPORATION

v.

## The UNITED STATES.

### No. 259–80C.

United States Court of Claims.

Dec. 2, 1981.

Sheldon I. Matzkin, Washington, D. C., atty. of record, for plaintiff. Herman M. Braude, Gerson B. Kramer, Douglas L. Patin, Wachtel, Ross & Matzkin and Braude, Margulies, Sacks & Rephan, Chartered, Washington, D. C., of counsel.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. Stuart E. Schiffer, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KASHIWA and SMITH, Judges.

## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SMITH, Judge:

Plaintiff's motion for partial summary judgment invokes review under the Wunderlich Act[1] of General Services Board of Contract Appeals (board) Decision No. 2975,[2] denying plaintiff the greater part of the relief it requested under the changes clause in its contract with defendant General Services Administration.

### A.

Plaintiff was the prime contractor for the Smithsonian Institution's Museum of History and Technology (now the National Museum of American History). The construction contract is dated September 1, 1959, and plaintiff was expected to complete the building within 900 calendar days. The contract contained the standard changes clause which read, in pertinent part:

The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. * * *

Plaintiff commenced work on October 7, 1959.

The work was to proceed in an orderly fashion, with the construction trades following each other sequentially from east to west on each floor, beginning with the basement and moving to the fifth floor and penthouse. Plaintiff had begun the process of erecting the structural steel frame and the concrete slabs which serve as flooring when, in May 1960, it noticed that certain of the columns were misaligned. While this was being corrected, construction of the concrete slabs on the second floor and above was suspended. On October 19, 1960, the contracting officer issued Change Order No. 36, which significantly changed the structure of the concrete floor slabs on floors 2 to 5 to make room for all of the conduits that had to be placed in them. The Government's original plans had failed to take adequate account of the conduits in designing the structural slabs and the change was necessary to protect the structural integrity of the floors. Plaintiff claims that the new plans for the floor slabs of the second to fifth floors caused delays and inefficiencies by ruining the planned sequence of production.

After the change order and (plaintiff asserts) the delays caused thereby, defendant issued several letters which plaintiff contends were constructive orders to accelerate. Plaintiff claims that the orders to accelerate, combined with the delays caused by the destruction of the orderly construction sequence by the change order, caused plaintiff to incur additional costs in the amount of $1,653,868.13.

The museum was substantially completed on August 30, 1963, 524 days after the original contract date. Subsequently, the contracting officer granted an extension as excusable delay for all of those days because of several strikes, bad weather, and a total of 158 change orders.

### B.

The original petition in this court alleged three causes of action: review of the board's decision under the Wunderlich Act, breach of contract for cardinal change, and breach of contract for defective plans and specifications. Only the Wunderlich review is raised on this single motion for summary

1. 41 U.S.C. §§ 321–322 (1976).

2. *Norair Eng'r Corp.*, 74–1 BCA ¶ 10,645.

judgment,[3] so, in view of our decision here, the breach of contract counts remain with the trial judge, to be addressed along with those aspects of this motion which we remand.

In its motion for partial summary judgment, plaintiff requests review of the board's decision on issues of fact[4] and of law. The board ruled that as a matter of law certain letters concerning the project's progress from defendant to plaintiff could not constitute acceleration orders, because a contract that was 524 days late (even though the delays were found excusable) could not be said to have been accelerated, and because the letters were not acceleration *orders* in the sense of being mandatory. The board also found, as a matter of fact, that in any case the cause of any extra delays and costs was attributable to plaintiff. To those three issues we now turn.

### C.

It is generally recognized that, in order to recover for the increased costs of acceleration under a changes clause, plaintiff must establish three things: (1) that any delays giving rise to the order were excusable, (2) that the contractor was ordered to accelerate, and (3) that the contractor in fact accelerated performance and incurred extra costs.[5] These correspond to the three legal and factual issues raised by

the board: the 524-day delay, the directive content of the letters, and the actual cause of the delays and costs.

1. *Excusable delay.* Contrary to the board's finding, there is nothing "incongruous" about an acceleration order on a contract that is 524 days late, as long as those additional days were excusable. As a logical proposition, the board's statement will not stand. It may be that the excusable causes for delay (including Change Order No. 36) in fact justified a 700-day extension. In that case, lateness of 500 days would necessarily have involved acceleration.

In this case, the Government admitted that the delay was excusable because it granted an extension for every day that the contract was late. We may not assume that the *post hoc* extension was some sort of gratuity; Norair presumably was granted it because it deserved it and the effect is that Norair completed the project within the contract time. Thus, there is no incongruity in its claiming that it had to accelerate performance in order to meet that contractual date.[6] While the normal constructive acceleration scenario is that the contractor experiences delays but is required to complete by the original date,[7] it is clear that completion on time is not required for the claim to stand.[8] We reverse the board

---

3. The trial judge ordered plaintiff to file a dispositive motion by an order under Rule 165(b) dated October 21, 1980. Plaintiff filed this motion on February 23, 1981. Defendant, however, failed to file a timely answer or cross-motion, and its sixth motion for enlargement of time was denied by the court on July 24, 1981.

4. The factual findings challenged by the exceptions are as follows: (1) the delay and change in sequence were caused entirely by the misalignment of the columns rather than by Change Order No. 36; (2) plaintiff's claim for 704 cubic yards of concrete used was unsubstantiated; (3) the sequence of pouring concrete *prior* to Change Order No. 36 was random anyway; (4) the pouring sequence on floors 2 through 5 was not more irregular than that of the basement and floor 1; (5) at no time did plaintiff's own correspondence attribute the delay to the change order; (6) plaintiff's rate of progress was better on floors 2 to 5 than that of the basement and 1; and (7) Potomac Iron's (a

subcontractor) claims for the change in floor level were unsubstantiated.

5. *See M.S.I. Corp.*, 69–1 BCA ¶ 7750, GSBCA No. 2429. In some cases, two more requirements have been added—that the contractor specifically request an excused delay and that the request be denied—but, as these are in effect equivalent to the requirement of an order to accelerate, we do not insist on them.

6. *See M.S.I. Corp.*, *supra* note 5, 69–1 BCA at 36,316. *See also Hagstrom Constr. Co.*, 61–1 BCA ¶ 3090, ASBCA No. 5698; *Electronic & Missile Facilities, Inc.*, 1964 BCA ¶ 4338 at 20,989, ASBCA No. 9031.

7. *See, e.g., Guaranty Constr. Co.*, 70–2 BCA ¶ 8483 at 39,440, GSBCA No. 3109.

8. *M.S.I. Corp.*, *supra* note 5, 69–1 BCA at 36,316.

on this point: a contractor who finishes the project within the contract time plus excusable delays is not disqualified as a matter of law from claiming acceleration costs.

2. *Order to accelerate.* An order to accelerate, to be effective, need not be couched in terms of a specific command. A *request* to accelerate, or even an expression of concern about lagging progress, may have the same effect as an order.[9] We stated in *Tombigee Constructors,*[10] quoting with approval a board decision:[11]

> We are unable to see any difference between a request and an order under the circumstances. The initiative came from the Government for the Government's convenience. It makes no difference whether appellant complied willingly or unwillingly, or whether or not it also benefited from the compliance. This was work done in a manner different from that required by the contract. Appellant is entitled to reimbursement for it.

With this in mind, a brief examination of the letters cited by plaintiff and the board[12] reveals that such an order was made.

We cite only the most obvious examples of these orders, but we emphasize that the requirement to speed up progress is evident throughout. In a letter of July 8, 1960, the resident engineer said, "I request that you take positive action to expedite the work by supplying the job with all materials necessary to accelerate progress." This letter orders both acceleration and greater expenditures to meet it. GSA confirmed the engineer's request in a letter of July 27, 1960. GSA on later occasions insisted on increases in work force and materials to speed up work. There was also considerable pressure applied to open the building as quickly as possible.

The pressure applied, even if it were merely implicit (which it was not), is particularly strong where liquidated damages hover in the background. Where the Government refuses (for whatever reason) to tell the contractor until the end of the project just what delay is excusable and what is not, the contractor is under considerable additional pressure to accede to a request because it does not know whether it will be found liable for liquidated damages.[13] In a letter to plaintiff on October 3, 1961, the Government specifically cited the contract's liquidated damages provisions as part of a warning that the *original* contract completion date was only 6 months away. The Government emphasized the original date (implying that delays might not be granted) in another letter. In short, while the Government recognized that some delays were validly excusable, it did not say which, and left it very clear that it disagreed with plaintiff as to the amount; therefore, plaintiff could have been required to accelerate work beyond what it thought was the proper rate (allowing for excusable delays) to avoid the risk of liquidated damages.

In light of the clear law that an acceleration order need not be couched in explicitly mandatory terms, we must disagree with the board that these letters cannot constitute an order to accelerate.

3. *Actual acceleration.* Having decided that these letters were orders, we are left with the question whether they in fact required acceleration beyond the contractual progress (that is, the progress specified by the original dates plus any excusable delays, in this case, at least 524 days). The record

9. *Tombigee Constructors v. United States*, 190 Ct.Cl. 615, 632, 420 F.2d 1037, 1046 (1970); *M.S.I. Corp., supra* note 5, 69–1 BCA at 36,317.

10. 190 Ct.Cl. 615, 632, 420 F.2d 1037, 1046.

11. *Hyde Constr. Co.*, 1963 BCA ¶ 3911 at 19,-391, ASBCA No. 8393.

12. These include letters designated Appellant's Exhibits 14, 16, 18, 19, 20, 21, 22, 24, 26, 27, 45.

Exhibit 25 was also found to be relevant in this regard.

13. *See Electronic & Missile Facilities, Inc., supra* note 6, 1964 BCA at 20,990; *Keco Indus., Inc.*, 1963 BCA ¶ 3891 at 19,318–19, ASBCA No. 8900. It should be noted, however, that mere failure to grant an extension at the time will not constitute a constructive order to accelerate.

in this case is voluminous and these causation questions complex. Accordingly, we remand these questions to the trial judge for a recommendation, along with the two breach of contract claims.

Essentially, the trial judge must determine whether plaintiff actually accelerated and whether it incurred extra costs in doing so. To find whether there was acceleration in this sense, the trial judge must determine what the proper rate of progress was, that is, whether Change Order No. 36 caused any delays which are not accounted for in the 524-day extension. The board found that the causes of the extra delay—that which required the speeding up—were mistakes of plaintiff; the trial judge must determine whether that conclusion is supported by substantial evidence. He must also decide whether plaintiff actually did speed up its work over this rate and whether it incurred extra cost in doing so.[14]

### D.

In sum, we reverse the findings of law of the board as to what may constitute an acceleration order, and we remand to the trial judge to review the board's factual findings, to which the legal principles may be applied. In addition, the trial judge should consider the breach of contract claims originally raised in plaintiff's petition.

Accordingly, after a thorough consideration of all submissions of the parties, and without oral argument, plaintiff's motion for partial summary judgment is granted in part, and this action is referred to the trial division for further proceedings consistent with the above opinion.

14. We note in passing that defendant challenged the board's jurisdiction in the proceeding below. Defendant questioned whether costs (if proven) incurred by a change in the planned sequence of construction are a sufficiently direct result of the change order to be treated as an equitable adjustment under the changes clause, consistently with the *Rice* doctrine. *See United States v. Rice*, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942). In the instant

case the board held that it had jurisdiction, and defendant did not reraise the issue in its answer to the petition in this court.

We consider the question to have been answered in favor of jurisdiction in *Electronic & Missile Facilities, Inc. v. United States*, 189 Ct.Cl. 237, 259–62, 416 F.2d 1345, 1359–60 (1969), and accordingly we affirm the board on this point.