JOHNSON CONTROLS, INC., Plaintiff,

v.

NATIONAL VALVE & MANUFACTURING COMPANY, Defendant.

No. 82–290–C.

United States District Court,
E.D. Oklahoma.

Aug. 29, 1983.

David Strecker, Douglas L. Inhofe, Tulsa, Okl., Thomas C. Wheeler & Barbara G. Werther, Washington, D.C., for plaintiff.

John T. Edwards, Oklahoma City, Okl., James H. McConomy, Kerry A. Kearney, Eric A. Schaffer, Pittsburgh, Pa., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION IN LIMINE

SEAY, Chief Judge.

This diversity case is a breach of contract action arising from the construction of a coal-fired power plant. Defendant National Valve & Manufacturing Company ("NAVCO") was a prime contractor on the construction project, and plaintiff Johnson Controls, Inc. ("JCI") was one of NAVCO's subcontractors.

JCI alleges in the present action that, as a result of circumstances surrounding performance of the subcontract, JCI is entitled to recover damages from NAVCO. NAVCO contends JCI is estopped to claim any damages because of its failure to make a written application for a time extension or for additional compensation as required by the subcontract. In a motion in limine JCI admits it never made the required written application, but nonetheless asks the court to rule as a matter of law that JCI's action is not barred because of its failure to submit written application.

After careful consideration of the evidence, applicable law and arguments of counsel, the court finds that JCI's claim for damages due to acceleration is barred.

### Background

On November 20, 1979, JCI contracted with NAVCO to provide certain instrumentation work on the Western Farmers Electric Cooperative power plant project located near Hugo, Oklahoma. Construction of the power plant was funded by the Rural Electrification Administration ("REA"), Department of Agriculture, and the prime contract between NAVCO and Western Farmers consisted in part of the REA Standard Form 200 Construction Contract provisions. The REA Form 200 provisions in NAVCO's prime contract with Western Farmers were incorporated into JCI's subcontract with NAVCO. The REA Form 200 provisions contained the following clause entitled "Time and Manner of Construction":

(d) The Owner, acting through the Engineer, may from time to time during the progress of the construction of the Project make such changes, additions to or subtractions from the Plans and Specifications and sequence of construction provided for in the previous paragraph which are part of the Contractor's Proposal as conditions may warrant: Provided, however, that if any change in the construction to be done shall require an extension of time, a reasonable extension will be granted if the Bidder shall make a written request therefor to the Owner within ten (10) days after any such change is made. If the cost of the Project to the Bidder to make the change shall be increased or decreased, the contract price shall be amended by an amount equal to the reasonable cost hereof in accordance with a construction amendment signed by the Owner and the Bidder and approved by the Administrator, but no claim for additional compensa-

tion for any such change or addition will be considered unless the Bidder shall have made a written request therefor to the Owner prior to the commencement of work in connection with such change or addition . . . .

Western Farmers required the plant to be in commercial operation by April 1, 1982. In order to meet this deadline in an efficient manner the scheduling of NAVCO's and JCI's work was coordinated on a system-by-system basis in a bar chart schedule. Much of JCI's work could not be performed until NAVCO's work was in place, and JCI thus scheduled its work based upon NAVCO's representations on the bar chart.

NAVCO's actual performance was substantially behind schedule, thus delaying JCI's work. Additionally, JCI received several extra work orders not covered by the original contract. JCI, in order to meet the mandatory April 1st deadline, accelerated performance by tripling its work force, working overtime and weekends, and adding a night shift.

JCI now seeks additional compensation from NAVCO for the acceleration and extra work.

In a hearing conducted on August 22, 1983, the court heard arguments from both parties concerning a motion for summary judgment on the issues of damages due to acceleration and damages due to extra work. During the hearing JCI presented legal arguments on the issue of acceleration, but failed to present any evidence tending to prove a question of fact. On the issue of extra work JCI presented evidence, in the form of depositions, tending to prove a question of fact.

### Acceleration of Work Claim

In its motion in limine and at the hearing of August 22nd, JCI admitted: (1) the contract required a written application for time extension or additional compensation; and (2) it failed to give written application for extension or compensation due to acceleration. JCI does not allege subsequent modification of the contract on this issue. Thus, no issue of material fact is in dispute.

On the issue of acceleration, the only question before the court is what law to apply.

JCI admits this issue is governed by Oklahoma law, but alleges that no Oklahoma cases have been found on construction contract acceleration of work claims. JCI argues, therefore, that federal government contract law should be applied in this case since the REA contract clause in question is similar to the standard "changes" and "time extension" provisions used in contracts of other federal agencies.

JCI encourages the court to apply contract law as interpreted by the Board of Contract Appeals. Specifically, JCI urges the court to follow *Norair Engineering Corp. v. United States,* 666 F.2d 546 (Ct.Cl. 1981). The *Norair* case lists three elements of a *prima facie* claim for acceleration of work, none of which require a specific request for extension of time or for additional compensation.

Although the court finds the Board of Contract Appeals' decisions to be persuasive, the subcontract provides, and the parties agree, that Oklahoma law is to govern this case.

■ Oklahoma has indicated clearly its desire for strict compliance with the unambiguous terms of a contract. *See* 15 O.S.A. §§ 154 and 155 (1966). In the instant case, the changes provision cited above is not ambiguous. The essential purpose of the provision was to allow changes in sequence of construction. If such changes were adverse to a party, the party had two options: (1) a written request for more time, or (2) a written request for more money. If JCI was adversely affected by the changes in sequence, it was JCI's duty to make written application to NAVCO requesting one or both of the remedies provided for by contract. By failing to file a written application, JCI failed to properly perform its contractual duty.

In *Flour Mills of America, Inc. v. American Steel Building Co.,* 449 P.2d 861 (Okl. 1968), the Oklahoma Supreme Court held that where a construction contract contains a clause requiring a written request for a

time extension, the contractor's late completion of performance will not be excused unless the contractor has submitted a written request for time extension. *Id.* at 872–75.

JCI urges the court to distinguish *Flour Mills* from the present case because *Flour Mills* involved liquidated damages whereas the present case involves acceleration of work. The court, however, finds no distinguishable difference between the two cases. Both cases involve contract terms that essentially are identical; that is, both contracts require a written request for the alleviation of adverse effects caused by changes in sequence.

In *Flour Mills,* the Court indicated that compliance with a contractual provision for an extension of time for completion of the contract is a condition precedent to relieving the contractor from the contractual liability for liquidated damages for delay in completion. *Id.* at 874.

Since Oklahoma law penalizes a subcontractor for failure to make written application, it logically follows that Oklahoma law will not reward a subcontractor for failure to make written application. If a contract unambiguously requires written application for additional compensation, then that requirement is a condition precedent to recovering additional compensation.

JCI argues that acceleration would have taken place regardless of written application, and that denial of compensation would work an undue hardship on plaintiff. Refusal to enforce the unambiguous terms of the contract, however, would work an equally undue hardship on NAVCO. A party to a contract has a right to rely upon the express terms of that contract. Under the express terms of the contract NAVCO had a right to be apprised in writing of any intent on the part of JCI to extend performance or increase compensation.

The parties in this action were represented by counsel and were free to contract as to the type of notice that would be required. When a party makes a contract and reduces it to writing, he must abide by its plainly stated terms. The court finds no reason to ignore the plain and unambiguous terms of the contract in question. The terms serve a beneficial purpose if disagreement arises. If there is to be additional compensation or an extension of time, it should be in writing as contemplated by the contract terms. *See* 152 A.L.R. 1349, 1378.

Finding no genuine issues of material facts in dispute, NAVCO's motion for summary judgment is granted as to the issue of acceleration only. JCI's motion in limine is denied.

### Extra Work

Upon consideration of the motion for summary judgment on all remaining issues as filed herein by NAVCO for judgment in NAVCO's favor, the court is satisfied that genuine issues of material facts are present in the case. Summary judgment is therefore inappropriate and said motion should be overruled. Rule 56, Federal Rules of Civil Procedure. *See, e.g., Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 561 F.2d 202 (10th Cir.1977).