ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Skanska USA Building, Inc. | )    ASBCA No. 62430 |
| | ) |
| Under Contract No. W912DR-13-C-0002 | ) |

APPEARANCES FOR THE APPELLANT:    Kevin M. Tracy, Esq.
     Gregory R. Hislop, Esq.
      McNamee Hosea, P.A.
      Annapolis, MD

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
      Engineer Chief Trial Attorney
     Martin Chu, Esq.
      Engineer Trial Attorney
      U.S. Army Engineer District, Baltimore

OPINION BY ADMINISTRATIVE JUDGE EYESTER
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Skanska USA Building, Inc. (Skanska) filed an appeal on behalf of two of its subcontractors alleging that the government's piecemeal and untimely approval of steel shop drawings resulted in a delay and required Skanska's subcontractor to constructively accelerate the fabrication of the structural steel system for the project. The U.S. Army Corps of Engineers (USACE or government) filed a motion for summary judgment arguing that there are no material facts in dispute to support a claim for constructive acceleration. For the reasons set forth below, we agree. Because the appellant argued that the government's actions caused other damages related to the delay, we grant the government's motion in part.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On October 30, 2012, the government awarded fixed-priced Contract No. W912DR-13-C-0002 to Skanska in the amount of $30,761,850, for the construction of the Asymmetric Warfare Group (AWG) Headquarters (HQ) Complex in Fort Meade, MD (R4, tab 2 at 1-3, 31). The HQ complex comprised of several buildings, including the HQ/operations building (R4, tab 5 at 5).

Skanska was to perform the work in conformance with all of the design documents, such as the plans and specifications, set forth in the solicitation (R4, tab 2 at 27). The specifications required Skanska to provide the structural steel system for the

complex, which included the design, materials, installation, workmanship, fabrication, assembly, and erection of the steel beams and columns (R4, tab 3 at 625). Before beginning the actual fabrication of the structural steel system, Skanska was required to submit shop drawings to the government for approval (R4, tab 3 at 625-26). The contracting officer was required to complete its review of the drawings within 30 calendar days of submission (R4, tab 3 at 84).

As required by the contract, Skanska provided a preliminary schedule to the government dated December 12, 2012, which showed the following schedule for the structural steel: submittals (January 17-January 31, 2013); approval of submittals (February 1-March 1, 2013); fabrication and delivery (March 4-April 12, 2013); and steel erection with metal deck and trusses for the AWG (May 8-June 7, 2013) (R4, tab 33 at 70, 73). On December 18, 2012, after receiving the government's notice to proceed, Skanska entered into a subcontract with Central Penn Welding & Iron, LLC (Central Penn) to perform the miscellaneous metals and structural steel work for the contract (R4, tab 6 at 18, tab 33 at 4).

During the course of performance, Skanska's steel subcontractor discovered design discrepancies and from January 16-February 6, 2013, Skanska sent the government requests for information (RFIs) relating to these discrepancies (R4, tab 6 at 14-15, tab 19 at 2-3). On February 6, Central Penn entered into a subcontract with Steel Fab Enterprises, LLC (Steel Fab) to perform the majority of the metals and structural steel work for the contract (R4, tab 33 at 47).

As the designer of the project, the government reviewed the RFIs and ultimately revised the structural steel design to fix errors or discrepancies (R4, tab 19 at 3-4). On April 24, 2013, Skanska received the final revised drawings from the government (R4, tab 19 at 3). The delay in the steel work resulted in a delay in the critical path of the overall schedule (R4, tab 19 at 6, tab 27 at 2).

As a result of this delay, Skanska was to submit its steel shop drawings to the government for review by May 29, 2013. Once the government completed review of these drawing submittals by June 28, 2013, Skanska was to send the submittals to its steel subcontractor to begin fabrication on July 7, 2013. (R4, tab 1 at 3) Skanska proposed the first structural steel components to arrive onsite by August 18, 2013 (R4, tab 6 at 15).

Skanska delivered the steel shop drawings to the government in sequences, after the May 29 due date. On June 12, the government received shop drawing submittal (or sequence) number 1 of 12 from Skanska. (R4, tab 7 at 1)

The government did not return submittal 1 to Skanska within the required 30-day period. Skanska informed the government that due to the late return of the submittal, it could not begin fabrication of the structural steel and would incur a delay to the project's

2

critical path, and "reserve[d] its rights to recover any/all costs associated with this delay once the full impact is realized." (R4, tab 20 at 1) On June 21, 2013, the government received the last of the 12 submittals, or sequences, for the structural steel from Skanska (R4, tab 14-18, tab 1 at 3).

The government did not meet its 30-day timeframe for review and approval of other structural steel submittals (R4, tab 1 at 3-4). On July 15, 2013, Skanska advised the government that "without the immediate return of the submittals . . . we will not be able to begin fabrication of the structural steel for the AWG HQ Building thereby resulting in a direct delay to the project critical path. Skanska reserves its rights to recover any/all costs associated with this delay once the full impact is realized" (R4, tab 21 at 1).

On August 2, 2013, Skanska wrote to the government and advised that several sheets of drawings were missing with respect to submittal 1 (R4, tab 22 at 1). Skanska informed the government that the failure to provide the outstanding submittals and sheets impacted the project's critical path for structural steel and:

> [t]he outstanding items represent a day for day delay to the project critical path calculated from the returned submittal due date through the comprehensive return of the items noted above. Skanska hereby reserves its rights to recover any/all costs associated with this delay once the full impact is realized.

(R4, tab 22 at 2)

On August 2, 2013, Skanska sent another letter stating that the government was from 15-29 days overdue in returning 10 of the structural steel submittals. Skanska stated that while some of the submittals had been returned late, they were also incomplete because they were missing sheets. (R4, tab 23 at 1-2) Skanska stated that the "cost and schedule delay to the project directly attributable to this issue is not immediately quantifiable due to the ongoing nature of the issue. However, an immediate delay to the project critical path stems from the delay in review/return of the structural steel shop drawings." Skanska stated it would seek reimbursement for "material cost increases, winter conditions, and all other direct and indirect costs associated with these delays." (R4, tab 23 at 2)

According to the government, it returned all hard copy shop drawing sheets for steel fabrication sequences 1-12 by August 13, 2013 and if any hard copy sheets were missing, it was the fault of Skanska's quality control (R4, tab 25). Skanska, however, stated that it had provided all of the hard copy sheets to the government (see R4, tab 25 at 1-2).

3

On August 12, 2013, Skanska wrote the government about the returned structural steel submittals and stated that numerous drawing sheets were missing (R4, tab 24 at 1). Skanska stated that:

> [T]his issue represents a direct delay to the project critical path. Please forward these shop drawing sheets at your earliest convenience so that the impact to the project schedule can be minimized. Upon receipt of these omitted sheets, Skanska will work with our steel fabricator to complete the fabrication as expeditiously as possible and to determine a date when steel erection can begin onsite.

Skanska informed the government that there was already a 31-calendar day delay due to the government's delay in responding to Skanska's first steel structure submittal and the 31-calendar day delay did not "include delays in fabrication restart due to shop availability. Skanska will seek reimbursement for ALL costs associated with this delay." (R4, tab 24 at 2)

On August 23, 2013, Skanska informed USACE that Skanska had received several of the missing sheets in the steel shop drawings, and that it understood USACE was sending the other sheets by CD Rom (R4, tab 26). Skanska advised that it "forwarded these omitted sheets to our steel fabricator with the direction to evaluate their fabrication shop schedule and to provide a date when steel erection can begin onsite. Once this information is received from our subcontractor, Skanska will notify the Corps of the total impact of the delay and forward a [request for equitable adjustment (REA)] for review/approval" (R4, tab 26 at 3).

On August 27, 2013, the agency issued bilateral Modification No. A00005 (Mod. A00005), pursuant to Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007), which was incorporated by reference into the contract (R4, tab 27 at 1, tab 2 at 12). The modification addressed the errors in the steel design drawings discovered in January 2013, increased the total contract price, and extended the contract completion date by 90 calendar days due to the delays in structural steel (R4, tab 27 at 2).

By August 29, 2013, Skanska received all outstanding structural steel shop drawing sheets approved by the government. Skanska informed the government that its steel fabricator was evaluating the remaining fabrication duration and shop schedule to determine a steel erection start date, and once the start date was determined, it would quantify the total impact of the delay and present an REA to the government for review and approval. (R4, tab 28)

Although Skanska notified the government several times that the delay in the approval of the steel shop submittals resulted in an overall delay to the critical path, we

4

find that Skanska never requested a specific modification to the contract's schedule in these notifications. Skanska argues that in addition to the letters, the parties were engaged in discussions during this time, however, Skanska never states these discussions concerned a request by Skanska for an extension or a demand by the government for an acceleration. (App. opp'n at 10-11) We find that the notifications from Skanska to the government during this time are clear--Skanska had not yet quantified the delay and would only notify the government later, once it realized the full impact.

Between October 17, 2013 and November 1, 2013, Skanska emailed Steel Fab about Steel Fab working on weekends (R4, tab 33 at 395-99). Specifically, in an email dated November 1, Skanska informed Steel Fab of the following:

> It is Skanska's opinion that without working both days this weekend and adding manpower to the project, you will not meet your recovery schedule completion date. Currently your crew is approximately 50% complete at most, with the steel, joist, and decking erection of the HQ building and is 4 weeks into your total working duration. Your recovery schedule has you complete on 11/18/13, or two weeks from this coming Monday. If your production onsite does not increase from what we have seen so far, [then] you will miss your completion date by about two weeks and drive the follow-up critical path activities further into winter conditions. Specifically, our concerns are the placement of slab on metal deck, waterproofing, air barrier, spray foam insulation, and masonry, all of which are temperature dependent. The impact on project both financially and schedule wise would be devastating.

(R4, tab 33 at 395) The government was not part of these communications (*see id.*; gov't mot. at 11). These emails, between Skanska and its own subcontractor, are the only supporting evidence Skanska provided with regard to any type of a demand for acceleration (app. opp'n ¶ 27).

On November 27, 2013, Skanska submitted a change order request for the added staff, overtime, and construction costs due to past delays in the prompt and proper return of structural steel submittals, beyond those set forth in Mod. A00005 (R4, tab 29 at 1). The change order request stated:

> [W]e believe that Skanska has provided proper notification to USACE for the impact of the delayed return of these submittals to the Project schedule. Skanska has been able to mitigate further delays to the schedule caused by this issue

5

but has been forced to re-sequence work and expend a considerable amount of additional resources to do so, including the use of anticipated float provided by the previously approved thirty[-]three (33) non-compensatory days from MOD #A00005.

(R4, tab 29 at 44).  The change order request included "ZERO additional days to the Project Schedule" (R4, tab 29 at 5).

Skanska argues that the adjusted project schedule for the completion of the structural steel was November 18, 2013, and this date remained in place despite the delay.  Skanska explains that the structural steel installation ultimately ran through December 30, 2013.  (App. supp. opp'n at 3)  In this case, Skanska began accelerating its work prior to its change order request--a request which did not seek an extension to its project schedule, only costs incurred.

On March 24, 2014, Skanska submitted a revision to its November 27 change order request (R4, tab 30 at 1).  Skanska's revised request for compensable days took into consideration the baseline start date for the steel erection of May 20, 2013; the start date due to Mod. A00005 of August 18, 2013; and the actual start date of October 8, 2013 (R4, tab 30 at 12).  Skanska stated that the change order request was only for the added cost and time noted in the request and that Skanska reserved the right to seek compensation for other delays and inefficiencies, including those concerning structural steel fabrication/erection (R4, tab 30 at 1).

The government issued bilateral Mod. No. A00023 for additional steel delay costs with an effective date of June 11, 2014 (R4, tab 32 at 1-2).  The modification included "all previous schedule impacts, logic, precedence and past related USACE schedule review remarks which will hereby be considered settled as of schedule update month ending October 31, 2013."  As a result of the modification, the total contract price increased by $200,214 and the contract completion date was extended by 20 calendar days.  (R4, tab 32 at 2)

On June 20, 2014, Steel Fab submitted an REA to Skanska, which was then submitted to the government on August 5, 2014; the government never responded (R4, tab 33 at 4).  On July 2, 2019, Skanska submitted a certified claim to the government on behalf of its two subcontractors Central Penn and Steel Fab for impacts due to steel shop drawing return delays (R4, tab 33 at 1).  The claim sought $428,774 for the failure of the government to review and approve steel shop drawings in a timely and sequential manner, which impacted the ability to perform and required Steel Fab to constructively accelerate work (R4, tab 33 at 1, 5).  On December 6, 2019, Skanska received the contracting officer's final decision denying the claim (R4, tab 36 at 1).  On March 4, 2020, Skanska timely appealed the final decision.

6

DECISION

In its complaint, which refers to the claim submitted to the government, Skanska argues it is entitled to damages caused by the government's failure to properly administer and manage the project, including but not limited to damages resulting from certain delays in the review and return of steel submittals (compl. ¶ 16). With respect to the alleged constructive acceleration, the pass-through claim submitted by Central Penn and Steel Fab states:

> [b]ecause the returned shop drawings were late, the original fabrication window was lost. As the shop drawings were approved, Steel Fab was required to go into fabrication immediately. Because other projects were being fabricated in the shop at the same time, Steel Fab implemented a rush order for the direct benefit of the Project. This expedited process required Steel Fab to work overtime. Had the government not demanded immediate fabrication as soon as the shop drawings had been approved, Steel Fab would have fabricated the structural steel in a sequentially as-planned manner during the next available fabrication opening.

(R4, tab 33 at 17-18) The claim also states that constructive acceleration occurred because "no extensions of time were granted to Steel Fab in a timely manner" (R4, tab 33 at 17).

The government moves for summary judgment.[1] As discussed in detail below, the government contends it is undisputed that Skanska never made a timely request for an extension (gov't mot. at 2-4; gov't reply at 3-5).

We will grant summary judgment only if the movant shows there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.

---

[1] A decision on a motion for summary judgment rather than on a motion to dismiss for failure to state a claim is proper where the parties rely on factual material beyond the allegations in the complaint. *Zafer Taahhut Insaat Ve Ticaret A.S. v. United States*, 120 Fed. Cl. 604, 608 (2015) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011)). Here, the parties have submitted and relied upon evidence and pleadings beyond Skanska's complaint and therefore, a decision on a motion for summary judgment is proper.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one which may make a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A non-movant seeking to defeat summary judgment must provide sufficient evidence supporting the claimed factual dispute to require a judge to resolve the parties' differing versions of the truth at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). When considering motions for summary judgment, the evidence produced by the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255.

As noted, the contract incorporated by reference FAR 52.243-4, CHANGES (JUN 2007). Pursuant to the Changes clause, a contracting officer may change "the work within the general scope of the contract" and the contractor may receive an equitable adjustment for such change via a formal change order. FAR 52.243-4(a)-(e); *see also id.* § 52.243–4(a)(4) (noting that one type of change is "[d]irecting acceleration in the performance"). Even without a formal change order, the contracting officer may constructively change the contract, "either due to an informal order from, or through the fault of, the government." *Zafer Taahhut Insaat Ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1361 (Fed. Cir. 2016) (quoting *NavCom Def. Elecs., Inc. v. England*, 53 Fed. Appx. 897, 900 (Fed. Cir. 2002)). An informal order to accelerate contract performance-- constructive acceleration--may result in a constructive change to the contract. *Id.* at 1362.

Constructive acceleration occurs when the government demands compliance with an original contract deadline despite an excusable delay by the contractor. *Id.* To prevail on such a claim, the appellant must show all of the following:

> (1) that the contractor encountered a delay that is excusable under the contract;
> (2) that the contractor made a timely and sufficient request for an extension of the contract schedule;
> (3) that the government denied the contractor's request for an extension or failed to act on it within a reasonable time;
> (4) that the government insisted on completion of the contract within a period shorter than the period to which the contractor would be entitled by taking into account the period of excusable delay, after which the contractor notified the government that it regarded the alleged order to accelerate as a constructive change in the contract; and
> (5) that the contractor was required to expend extra resources to compensate for the lost time and remain on schedule.

*John C. Grimberg Co..*, ASBCA No. 58791 *et al.*, 18-1 BCA ¶ 37,191 at 181,044 (citing *Fraser Constr. Co. v. United States*, 384 F.3d 1354, 1360-61 (Fed. Cir. 2004)).

8

The government argues that the appellant fails to designate facts establishing that the government caused the acceleration, either by action or inaction (gov't mot. at 3). Specifically, the government argues that the following facts are not in dispute: (1) Skanska never made a timely and sufficient request for an extension to the contract schedule because it opted to wait until after the full extent of the delay was known; (2) the government could not have denied or failed to reasonably respond to Skanska's request for an extension of time because one was never submitted prior to or during the alleged acceleration period; and (3) Skanska does not identify facts or evidence to indicate the government ordered Skanska to accelerate (gov't mot. at 3, 16-18). The government contends that Skanska's only email communications in the record regarding acceleration are between Skanska and Steel Fab during the period of October 2013 through November 2013, where Skanska asked Steel Fab to add more manpower because Steel Fab could not meet the deadlines in the schedule (gov't mot. at 18).

Skanska argues that when it informed the government about the delay in returning the structural steel submittals and stated that Skanska will work with its steel fabricator to "complete the fabrication as expeditiously as possible," the appellant placed the government on notice it was accelerating the work (app. opp'n ¶ 41, quoting R4, tab 24). Further, Skanska argues it could not simply wait for the government to resolve pending issues and that it was bound contractually by the schedule, which had not been amended to address the delays in government review of the submittals (app. opp'n ¶¶ 57-58).

As relevant here, "[c]onstructive acceleration requires that the government be afforded an opportunity to grant or deny a time extension on account of the delay." *Fraser Constr. Co.*, 384 F.3d at 1363. (quoting *Greulich, Inc.,* Eng. BCA No. 3832, 78-2 BCA ¶ 13,417 at 65,588 (Eng. BCA 1978)). The purpose of the request for an extension of time, and supporting information, is to "allow the Government to make a reasonable determination concerning how to proceed." *Commercial Contractors Equip., Inc.*, ASBCA No. 52930 *et al.*, 03-2 BCA ¶ 32,381 at 160,216. The "mere failure to grant an extension at the time will not constitute a constructive order to accelerate." *Fraser Constr. Co.*, 384 F.3d at 1363 (quoting *Norair Eng'g Corp. v. United States,* 666 F.2d 546, 549 (1981).

After construing the facts in the light most favorable to Skanska, we conclude that there is no genuine factual dispute as to whether Skanska timely and sufficiently requested an extension or the government improperly denied a request for a time extension. Our findings show that prior to the acceleration, Skanska repeatedly informed the government that its failure to approve the submittals on time caused a cost and schedule delay to the project. However, Skanska informed the government that it was a delay that would only "later" be quantified. Skanska has offered nothing to show, or even hint, that it requested a specific time extension, either orally or in writing, for any

9

delay resulting from the steel submittal prior to its acceleration.[2] *See Zafer Taahhut Insaat Ve Ticaret A.S.*, 833 F.3d at 1363; *cf. Todd Pacific Shipyards Corp.*, ASBCA No. 53674, 04-1 BCA ¶ 32,560 at 161,054.  "Failure to timely request an extension bars recovery." *John C. Grimberg Co..*, 18-1 BCA ¶ 37,191 at 181,044.

Because Skanska has failed to establish it made a request for an extension of the contract schedule prior to acceleration, it has also not shown that the government denied the contractor's request for an extension prior to the acceleration.  *See Garco Const., Inc. v. Secretary of Army*, 856 F.3d 938 at 945-46 (Fed. Cir. 2107) (appellant failed to make a *prima facie* case of constructive acceleration where it never formally requested a time extension and the government could therefore not have denied one)*; cf. McKenzie Engineering Co.*, ASBCA No. 53374, 02-2 BCA ¶ 31,972 at 157,925 (motion for summary judgement denied where reasonableness of interval between when appellant requested an extension of time for completion of project and government's response was a triable issue).

Skanska has failed to identify any facts to establish a request or denial of an extension of time for purposes of acceleration.  *See Zafer Taahhut Insaat Ve Ticaret A.S. v. United States,* 833 F.3d at 1364.  Skanska has therefore failed to establish a constructive acceleration claim.[3]  Accordingly, the government is entitled to summary judgment as a matter of law.

The appellant argues that its complaint and claim included claims for acceleration and constructive acceleration, and damages for delay (app. opp'n ¶ 1; compl. ¶ 16).  A delay claim and constructive acceleration claim are two distinct claims:  "A constructive acceleration claim, although arising out of the same facts as a delay claim, has been held to be a separate claim because it requires proof of the additional element of an express or implied Government order to overcome the excusable delay." *Gaffny Corp.*, ASBCA

---

[2] Skanska argues that putting the government on notice of the potential delay is sufficient and cites to *Gibbs Shipyard, Inc.*, ASBCA No. 9809, 67-2 BCA ¶ 6499 as support (app. supp. opp'n at 1-3).  In that appeal, the appellant had put the government on notice that it encountered problems that could result in an excusable delay, and the government stated it would not relax the operational date and would take adverse action against the appellant if the final completion date was not met.  We held that any requests for a specific time extension after the government's unequivocal order would have been pointless.  In comparison, here, Skanska has not stated the government specifically ordered completion of the structural steel by a certain due date, and therefore Skanska cannot argue that a request for an extension prior to acceleration would have been pointless.

[3] To the extent Skanska has argued that the government ordered the acceleration and it was not constructive acceleration, Skanska has not provided any support for this contention, either.

No. 37639 *et al.*, 94-1 BCA ¶ 26,522 at 132,012 (citation omitted). As the government's motion for summary judgment did not seek dismissal of the claim for damages due to delay, this issue is still before the Board.

CONCLUSION

Accordingly, we grant the government's motion for summary judgment in part, as it relates to the appellant's arguments concerning acceleration/constructive acceleration.

Dated: September 23, 2021

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62430, Appeal of Skanska USA Building, Inc., rendered in conformance with the Board's Charter.

Dated:  September 27, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals